In the Matter of the Application of the SUBURBAN RAPID TRANSIT COMPANY, to Acquire Title to Real Estate, etc.

*Taking of land for railroad purposes under chapter 606 of 1875— contents of petition — power of the court to amend it — what objections to the character of the evidence received cannot be first raised on appeal — duty of the commissioners as to determining the route and as to fixing the time for the completion of the railway.*

A petition presented to the court, under section 18 of chapter 606 of 1875, for the appointment of commissioners to ascertain and appraise the value of certain property required for the construction of a railway, stated that the petitioner " has not been able to acquire title to said land, and that the reason of such inability is that the owner thereof refuses to sell the same for any reasonable compensation, and that your petitioner has not been able to agree with the owner or owners of said real estate, or of any interest therein, for the sale of the same to your petitioner."

*Held,* that this was a sufficient compliance with the direction contained in the act, requiring the petition to state " that the company has not been able to acquire title thereto, and the reason of such inability."

Upon the hearing affidavits were produced, showing that unsuccessful negotiation for the purchase of the property had been had.

*Held,* that the court had power, under section 23 of the said act, to receive the affidavits and to amend the defect, if any existed, in the petition.

It was also objected that the case should have been heard upon oral evidence, and not upon affidavits.

*Held,* that the objection was waived by not being taken at the hearing.

A portion of what had been designated as the central route of the petitioner's railway extended from the intersection of Third avenue and One Hundred and Twenty-ninth street, in the city of New York, where it was to form a connection with the New York Elevated railroad, along One Hundred and Twenty-ninth street to Second avenue. It was objected in the answer that the consent of the property owners and of the local authorities, required by the fourth section of the act, had not been obtained.

*Held,* that the consent was not required to be obtained before, but only after the laying out and determining of the route.

That, in fixing and determining the routes of the railroads, the commissioners were not required to give precise directions as to the location of the line upon the ground, but that it was sufficient if the general direction was given, together with its deflections and curves, from which the line of the railroads, and what property might be acquired and appropriated for its purposes, could be readily ascertained.

Section 6 of the act required the commissioners to fix and determine the time within which the railway should be constructed and ready for operation. The commissioners determined that not less than five miles of the railway should be constructed and ready for operation before September 1, 1885.

*Held,* that it could not be made to appear in these proceedings instituted in May, 1885, and concluded in July, 1885, that the company had then failed, or would hereafter fail to construct and complete five miles of the railway on or before September 1, 1885.

That the attempt of the commissioners to enlarge the time fixed for the completion of the railway upon the happening of events other than those specified in section 38 of the said act, although void and of no effect, did not impair or change, in any respect, the effect of their action in fixing and determining the time within which the work must be completed.

APPEAL by Patrick Nolan and others from an order made on the 8th of July, 1885, appointing commissioners to ascertain and appraise the value of certain property required for the construction of the petitioner's railway.

*John C. Shaw,* for the owners, appellants.

*Samuel E. Lyon* and *Thomas L. Ogden,* for the petitioner, respondent.

DANIELS, J.:

The petition was presented to the court under the authority of section 18, chapter 606 of the Laws of 1875, and it contained a statement of the several matters required by that section to be inserted in it. It was, however, objected upon the hearing, and the same objection has been repeated in support of the appeal, that the peti-

tion was radically defective in failing to show that the company had not been able to acquire title to the land, and the reason of such inability. The petition did contain the statement that the petitioner "has not been able to acquire title to said land, and that the reason of such inability is that the owner thereof refuses to sell the same for any reasonable compensation, and that your petitioner has not been able to agree with the owner or owners of such real estate or of any interest therein for the sale of the same to your petitioner."

And that, generally speaking, complied with what was required for this purpose by this section of the act. For all that was directed to be stated was "that the company has not been able to acquire title thereto and the reason of such inability." This statement contained in the petition was not denied by the answer interposed to it. It accordingly stood admitted upon the record, and even though it may have been defective in not stating more at large what had transpired between the petitioner and the owner of the property, it was still sufficient to give the court jurisdiction over the proceeding. The case of the *New York Cable Railway Company* (36 Hun, 355) in no way conflicts with this conclusion, for that arose under a different provision of the statute which the affidavits referred to failed to show had been observed in every essential requirement.

But, upon the hearing which took place before the court, affidavits were produced on both sides, setting forth in detail what it was asserted had taken place between the company and the owner of the land, as well as his agent, to obtain the title thereto by purchase. And these affidavits were sufficient in detail to show that negotiations had ineffectually taken place between the company and the owner for the purchase of this property. If the petition should be held to be defective in this respect, the affidavits produced supplied the defect. And the court was empowered to allow it to be supplied or amended by section 23 of the act, which declares that "the court shall also have power at any time to amend any defect or informality in any of the special proceedings authorized by this act, as may be necessary." That invested the court with sufficient authority to receive the additional affidavits presented by the petitioner for the purpose of amending, elaborating and extending this statement contained in the petition. And the only objection which was taken to the reading of the affidavits for this or any other pur-

pose upon the hearing, was that they were not served with the petition. That objection, as this power of amendment existed, was not well founded, and the court was right, therefore, in overruling it.

It has also been objected, in support of the appeal, that the case should not have been heard by the court upon affidavits, but that oral evidence should have been required for that purpose. And this objection would undoubtedly have been a good one if it had been taken at the hearing. (*Matter of N. Y., Lack. and W. Railway Co.*, 26 Hun, 194.) But it was not, and for that reason it must be held to have been waived by the parties, as it appears in fact to have been, by the production of affidavits in behalf of the positions taken by each of them.

The answer filed to the petition contained certain denials and allegations upon which the hearing before the court proceeded. It was denied that the petitioner had become a corporation under the act of 1875. Also, that the certificates required to be made and filed had been made or filed,' as the law directed that to be done, and that the capital stock had been subscribed by more than twenty-five persons. But these denials were overcome by the uncontradicted evidence received at the hearing; for it was proved that the stock had been subscribed for by twenty-nine different persons, and that the requisite percentage of the subscriptions had been paid in cash. It was also in like manner proved that the certificates mentioned in the ninth section of the act had been made and filed. It is true that the one certifying in duplicate to the articles of association and the proceedings was made by four, instead of the five constituting the board of the mayor's commissioners. But that was allowed to be done by the act itself. For, by section 39, "a majority of the said commissioners shall be deemed and considered sufficient for the transaction of any business, or for the exercise of any of the duties, powers or functions hereby conferred or enjoined upon them."

A portion of what has been designated as the central route of the petitioner's railways, extends from the intersection of Third avenue and One Hundred and Twenty-ninth street, in the city of New York, where it was to form a connection with the New York Elevated railroad, along One Hundred and Twenty-ninth street to Second avenue. And it was averred in the answer, as an objec-

tion to these proceedings, "that before the said commissioners could so lay out and determine the route and construction of the said railroad, the said commissioners, or any person whomsoever, wholly failed to obtain the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having control of One Hundred and Twenty-ninth street, in the city of New York, upon which it is proposed to construct the railway or railways of the petitioner." But that consent, was not required by any provision of the act to be obtained before the commissioners could lay out and determine the route of the railways. On the contrary, the precedent act provided for by the law was the laying out, or locating, the route or routes of the railway, and it was after that had been done that the consents mentioned in section 4 of the act were required to be obtained.

It was also objected by the answer that the routes themselves, of the railways, had not been fixed or determined, as that was required by the statute. But the general courses upon which the railways were to be constructed were laid out and directed by the commissioners. Their directions were not precise as to the line to be located upon the ground. But the general direction was given, together with its deflections and curves, from which it could be readily ascertained where the line of the railways should be laid, and to what extent property might be appropriated and acquired by it for the construction and operation of such railways. And no practical difficulty could stand in the way of following the lines, indicated by the commissioners, as the lines upon which the railways were to be constructed and operated. These railways are to consist of four distinct routes, but so connected as to form parts of one general plan. The land, the title to which the petitioner desires to obtain, is upon the line of what is called the east side route. And that route has been so described and stated in the proceedings of the mayor's commissioners, as to leave little or no difficulty in the way of laying it out accurately and practically upon the ground. They might, it is true, have been more precise and explicit, in the details required by the act, to be observed for the erection of "supports, turn-outs, switches, sidings, connections, landing-places, stations, buildings, platforms," etc. But the failure to do that, as long as the statute has been practically complied with

in designating and describing the route upon which the railway may be constructed, will not render this part of their proceedings ineffectual. For the company may well follow the route and lay its railway tracks and operate its road upon it in compliance with the directions which have been given, even if its stations were not located, or its connections, etc., have not been indicated. So far as the route was included, the directions certainly have been sufficiently complete, and it is to carry them into effect that the title to the land in dispute has been found to be necessary by the company. And if beyond that any improper authority has been delegated to the company that will not nullify the proceedings, so far as they were legally taken for laying out, constructing and operating the road, but the delegation of the unauthorized authority will itself be unlawful and void.

The commissioners did prescribe and determine the time within which the railways should be constructed. That was declared in clear and express language, viz.: " Not less than five miles of the railway or railways upon the routes herein authorized shall be constructed and ready for operation before the first day of September, 1885, and within five years thereafter the railway or railways upon all the routes herein authorized shall be constructed and ready for operation." And as this proceeding was instituted in May, 1885, and concluded on the eight of July of the same year, it could not be made to appear that the company had then, or would afterwards fail in the construction and completion of five miles of its railway on or before the 1st of September, 1885.

The stock of the company was divided into 6,000 shares of $100 each, and the verified report of the inspectors of the election showed that 5,800 shares voted in favor of the election of the nine persons declared to be elected its directors. It might be inferred from this large preponderance of shares that more than the statutory number of persons voted for the election of the directors. But that was not left to inference upon the hearing. For it was stated in the affidavit of the president of the company that the stock had been subscribed for by twenty-nine different persons, and that the directors had been chosen by a majority in number and amount of the subscribers.

After the commissioners appointed by the mayor had determined upon the time within which not less than five miles of the rail-

way or railways should be constructed and ready for operation, and within which the residue should be completed, they proceeded to declare "that the time, if any, unavoidably consumed by the pendency of legal proceedings or by the interference of the public authorities, or their neglect to consent, shall not be deemed a part of any period of the time within which construction and completion of the railway or railways is required to be made.   But the time, if any, during which such unavoidable delay shall continue, shall be added to each of the periods hereby otherwise limited for construction and completion of the railway or railways."   No such declaration or qualification of the time was required from the commissioners, for the act by its thirty-eighth section had prescribed the only qualification intended to be allowed by way of enlargement or extension of the periods fixed and determined by them. In that it was "provided, however, that the time, if any, unavoidably consumed by the pendency of legal proceedings shall not be deemed a part of any period or time limited in this act."   This part of the section was enacted in such terms as to execute itself.   It required no repetition from the commissioners. Neither did they have the power to enlarge the provision by including any other interference of the public authorities, or providing against the contingency of their neglect to consent, for these were matters regulated wholly and entirely by the statute.   But inasmuch as the commissioners did fix and determine the time, they did comply with the requirements of the statute relating to that subject.   And after having done so they could not invalidate or render that compliance inoperative by attempting to add a qualification or a provision, for its extension, which they had no power or authority to make.   The latter was a void attempt to exercise authority with which they had not been invested, and it could not have the effect of impairing or changing, in any respect, the efficiency of the act which they had previously, as well as legally, performed.

The railways which the petitioner has been allowed to construct are designed to be laid over private property, with the exception of that portion included in One Hundred and Twenty-ninth street, and that which will be occupied by crossing the streets its routes will intersect.   In this respect it is distinguishable

from that of the routes of the Cable Railway Company, which, so far as they have been involved in controversy, are laid upon the public streets of the city. It is designed to construct it as it has been laid out and located over private property, and its right to do that, so far as it now has been controverted, matured before the passage of the Street Surface Railway Act of 1884. Neither of the objections arising in that case appear in the one now before the court. For as to the designation of the time itself, it was fixed and determined by the commissioners as the law required that to be done, while in the other case it was proposed to commence that time from the completion or occurrence of other events, which it was no part of the province of the commissioners to take into consideration for that purpose. Neither of the objections which have been taken to the petitioner's proceedings appear to have been well founded, but the order which was made at the hearing was warranted by the law, as well as the circumstances of the case, and it should be affirmed, with the usual costs and disbursements.

A similar state of facts has been presented in support of the appeal of Joseph O. Farrington and another from a like order, and the same disposition should accordingly be made of that case.

Brady, J., concurred; Davis, P. J., concurred in the result.

Order affirmed, with ten dollars cost and disbursements.